90 Cal.Rptr.2d 922 (1999)
76 Cal.App.4th 1238
NICOLE M., Plaintiff and Appellant,
v.
SEARS, ROEBUCK & CO., Defendant and Respondent.
No. H019268.
Court of Appeal, Sixth District.
December 13, 1999.
*923 Allen H. Fleishman, Heidi R. Larson, Law Offices of Allen H. Fleishman, San Jose, for Appellant Nicole M.
Harrington, Foxx, Dubrow & Canter, Henry A. Wirta, Jr., Elizabeth J. Miller, Los Angeles, for Respondent Sears, Roebuck & Co.
BAMATTRE-MANOUKIAN, Acting P.J.
Plaintiff Nicole M. appeals after entry of a summary judgment in favor of defendant Sears, Roebuck & Co. (Sears). Plaintiff asserts that Sears could have prevented an attempted sexual assault on her in its parking lot by providing better lighting and landscaping. For the reasons stated below, we will affirm the judgment.

FACTS
On Sunday, March 3, 1996, around 9 p.m., as plaintiff was walking home, she took a shortcut across the parking lot of the Sears store in the San Antonio Shopping Center in Mountain View. She saw a nicely dressed and clean-cut man, Pedro Dias Santa Cruz, standing near one entrance to the parking lot.[1] The area was well-lit except for two lights that were out near a dense row of bushes. Plaintiff walked past the man. He ran up behind her, grabbed her, and tried to drag her into the nearby bushes. Plaintiff was able to fight him off before they got to the bushes. After the police arrived that night, plaintiff was able to point out to them where the man was trying to hide.
The Sears manager was aware that a homeless man had been camping in those bushes since July 1995. The homeless man was not the one who attacked plaintiff. The Sears manager had asked a landscaper to trim the bushes, but he was unable to trim the bushes because they were too big for his tools. Prior to this attack, neither Sears nor the Mountain View police had a record of a sexual assault at the San Antonio Shopping Center.
Dr. Dennis Dalton, a security expert, declared that "there are inherent dangers associated with overgrown bushes, clumps of trees, extensive litter and areas where a potential criminal would lay in wait for a victim. This danger is particularly high when the characteristics of the area create what are referred to as `rape corridors' or `rape areas' which can be described as dark passageways or burrowed out areas in bushes where a criminal act would be concealed from view." "[T]he nature and characteristics of the location where [plaintiff] was attacked facilitated the commission of the crime and increased its likelihood. I would characterize the area as a sexual assault waiting to happen that could have been prevented by cleaning the area, trimming or removing the bushes and insisting on the absence of homeless persons."

PROPERTY OWNERS' LIABILITY FOR CRIMINAL CONDUCT BY A THIRD PARTY
A defendant's summary judgment motion asks the court to determine, based on the papers submitted by the parties, whether there remains a triable issue of material fact or whether undisputed facts warrant judgment as a matter of law, either because at least one element of each *924 alleged cause of action cannot be established or because a complete defense exists. (Code Civ. Proc., § 437c, subds. (c), (o)(2).) An appeal from a summary judgment ruling presents the same questions for independent review. (Romano v. Rockwell Internat., Inc. (1996) 14 Cal.4th 479, 486-487, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Green v. Ralee Engineering Co. (1998) 19 Cal.4th 66, 72, 78 Cal. Rptr.2d 16, 960 P.2d 1046; Calvillo-Silva v. Home Grocery (1998) 19 Cal.4th 714, 735-736, 80 Cal.Rptr.2d 506, 968 P.2d 65.)
"An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff." (Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 673, 25 Cal.Rptr.2d 137, 863 P.2d 207 (Ann M).) "Duty, being a question of law, is particularly amenable to resolution by summary judgment." (Parsons v. Crown Disposal Co. (1997) 15 Cal.4th 456, 465, 63 Cal.Rptr.2d 291, 936 P.2d 70.)
Ann M. stated: "It is now well established that California law requires landowners to maintain land in their possession and control in a reasonably safe condition. (Civ.Code, § 1714; Rowland v. Christian (1968) 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561.) In the case of a landlord, this general duty of maintenance, which is owed to tenants and patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." (6 Cal.4th 666, 674, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
This duty was identified in the Restatement Second of Torts, as Kentucky Fried Chicken of Cal., Inc. v. Superior Court (1997) 14 Cal.4th 814, 59 Cal.Rptr.2d 756, 927 P.2d 1260 explained. "`A possessor of land who holds it open to the public for entry for his [or her] business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure to [sic ] the possessor to exercise reasonable care to [¶] (a) discover that such acts are being done or are likely to be done, or [¶] (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.' (Rest.2d Torts, § 344 (section 344).)
"Comment f to section 344 further explicates its intent: `Since the possessor is not an insurer of the visitor's safety, he [or she] is ordinarily under no duty to exercise any care until he [or she] knows or has reason to know that the acts of the third person are occurring, or are about to occur. He [or she] may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he [or she] has no reason to expect it on the part of any particular individual. If the place or character of his [or her] business, or his [or her] past experience, is such that he [or she] should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he [or she] may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.' (§ 344, com.f, pp. 225-226.)
"Where a warning of danger is not adequate to protect a patron from intentional harmful acts of a third party, a landowner must `exercise reasonable care to use such means of protection as are available.' (§ 344, com.d, p. 225.) When criminal conduct is ongoing, that duty requires that the landowner or occupier take such appropriate action as is reasonable under the circumstances to protect patrons. (Taylor v. Centennial Bowl, Inc. [(1966)] 65 Cal.2d 114, 124-125, 52 Cal.Rptr. 561, 416 P.2d 793.)
*925 "The Restatement rule continues to be the generally accepted test of liability of a business owner for injuries on the business premises caused by third party criminal conduct. A land occupier `must act as a reasonable person to avoid harm from the negligence of contractors and concessionaires as to activities on the land, as well as that of other persons who have entered it, and even from intentional attacks on the part of such third persons. He [or she] is required to take action when he [or she] has reason to believe, from what he [or she] has observed or from past experience, that the conduct of the other will be dangerous to the invitee, but not if there is no reason to anticipate a problem.' (Prosser & Keeton, Torts (5th ed. 1984) Invitees, § 61, p. 428, fns. omitted.)" (14 Cal.4th at pp. 823-824, 59 Cal.Rptr.2d 756, 927 P.2d 1260.)
Ann M., supra, stated: "Some factors that courts consider in determining the existence and scope of a duty in a particular case are: `[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (Rowland v. Christian, supra, 69 Cal.2d at p. 113, 70 Cal.Rptr. 97, 443 P.2d 561.)" (6 Cal.4th 666, 675, fn. 5, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
"[F]oreseeability is a crucial factor in determining the existence of duty." (Ann M., supra, 6 Cal.4th 666, 676, 25 Cal.Rptr.2d 137, 863 P.2d 207.) "Foreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court." (Id. at p. 678, 25 Cal.Rptr.2d 137, 863 P.2d 207.) Pool v. City of Oakland (1986) 42 Cal.3d 1051, 232 Cal.Rptr. 528, 728 P.2d 1163 explained: "[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct. [¶] Moreover, what is required to be foreseeable is the general character of the event or harm ... not its precise nature or manner of occurrence." (Id. at p. 1063, 232 Cal.Rptr. 528, 728 P.2d 1163; internal quotations and citations omitted.) On the other hand, "the creation of a legal duty requires more than a mere possibility of occurrence since, through hindsight, everything is foreseeable." (Hegyes v. Unjian Enterprises, Inc. (1991) 234 Cal.App.3d 1103, 1133, 286 Cal.Rptr. 85.)
The duty calculus involves balancing foreseeability against several factors, including the extent of the burden to be imposed on the defendant. "`"In cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." [Citation.]'" (Ann M., supra, 6 Cal.4th 666, 678-679, 25 Cal.Rptr.2d 137, 863 P.2d 207, quoting Isaacs v. Huntington Memorial Hospital (1985) 38 Cal.3d 112, 125, 211 Cal.Rptr. 356, 695 P.2d 653 (Isaacs).)
Ann M. refined "the rule enunciated in Isaacs." (6 Cal.4th 666, 678, 25 Cal. Rptr.2d 137, 863 P.2d 207.) Isaacs "held that foreseeability, for tort liability purposes, could be established despite the absence of prior similar incidents on the premises." (Id. at p. 677, 25 Cal.Rptr.2d 137, 863 P.2d 207.) Ann M. reaffirmed the importance of prior similar incidents, at least when the issue is whether the property owner has a duty to provide security guards. The court stated: "While there may be circumstances where the hiring of security guards will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a *926 `minimal burden.' The monetary costs of security guards is not insignificant. Moreover, the obligation to provide patrols adequate to deter criminal conduct is not well defined. `No one really knows why people commit crime, hence no one really knows what is "adequate" deterrence in any given situation.' (7735 Hollywood Blvd. Venture v. Superior Court (1981) 116 Cal.App.3d 901, 905, 172 Cal.Rptr. 528.) Finally, the social costs of imposing a duty on landowners to hire private police forces are also not insignificant. [Citation.] For these reasons, we conclude that a high degree of foreseeability is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards. We further conclude that the requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (Id. at p. 679, 25 Cal.Rptr.2d 137, 863 P.2d 207, fn. omitted.)
In Ann M. a woman was raped while working in a store in a shopping center. (6 Cal.4th 666, 670-671, 25 Cal.Rptr.2d 137, 863 P.2d 207.) The court found that the shopping center owner owed her no duty to provide a security guard in the absence of evidence of prior similar violent criminal acts on the shopping center premises. (Id at pp. 679-680, 25 Cal.Rptr.2d 137, 863 P.2d 207.) The court stated, "Neither the evidence regarding the presence of transients nor the evidence of the statistical crime rate of the surrounding area is of a type sufficient to satisfy this burden.8" (Id. at p. 680, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
8 In footnote 8, the court stated: "Ann M. offered no evidence to show that, like a parking garage or an all-night convenience store, a retail store located in a shopping center creates `"an especial temptation and opportunity for criminal misconduct."` (Gomez v. Ticor [(1983)], supra, 145 Cal. App.3d at p. 628, 193 Cal.Rptr. 600 [victim killed returning to car in parking garage]; Cohen v. Southland Corp. (1984) 157 Cal. App.3d 130, 141, 203 Cal.Rptr. 572 [robbery at all-night convenience store].) Therefore, we need not consider in this case whether some types of commercial property are so inherently dangerous that, even in the absence of prior similar incidents, providing security guards will fall within the scope of a landowner's duty of care." (6 Cal.4th 666, 680, 25 Cal.Rptr.2d 137, 863 P.2d 207.)[2]
On appeal, the parties disagree about the scope of Ann M.'s holding. Plaintiff asserts that prior similar incidents are prerequisite only to providing security guards and not lesser security measures. Plaintiff argues that she is not asking for security guards. She is asking "that the [homeless] encampment, including a sleeping bag and an abandoned refrigerator be removed, that the bushes be maintained, the refuse be removed, and the overhead lighting be maintained."[3] Plaintiff contends that these clean-up activities would involve "a tremendously minimal burden," requiring "imposition of a duty in this case without the necessity of a showing of prior similar incidents." Sears asserts that "Ann M. totally revamped the entire body of case law governing liability for third party criminal conduct." Sears also argues "[t]he attacker was not standing in the bushes, plaintiff was able to see him before the assault, and there is no evidence *927 that the attacker was homeless or resided in the encampment."
Plaintiff relies primarily on the burden or expense element of the duty formula. However, the predicate of any duty to prevent criminal conduct is its foreseeability. Property owners have no duty to prevent unexpected and random crimes. Ann M. confirms this point. The court said that the "heart of the case" was whether the shopping center owner "had reasonable cause to anticipate that criminal conduct such as rape would occur in the shopping center premises unless it provided security patrols in the common areas. For, as frequently recognized, a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." (6 Cal.4th 666, 676, 25 Cal.Rptr.2d 137, 863 P.2d 207.) This phrasing reaffirms a passage in the Restatement Second of Torts that a duty arises "[i]f the place or character of his [or her] business, or his [or her] past experience, is such that he [or she] should reasonably anticipate careless or criminal conduct on the part of third persons." (Rest.2d Torts, § 344, com.f, p. 226.) "Reasonable anticipation" is another description of foreseeability.
Conceding that Sears's past experience with prior similar incidents did not give rise to a duty, plaintiffs argument is that the duty arose due to the "nature of the property." "[A]llowing a homeless encampment, garbage and debris, and poor lighting to remain on Sears property for more than one year made it reasonably foreseeable that a criminal act would occur and created a part of the property that was inherently dangerous." Plaintiff is attempting to fit within Ann M.'s footnote 8, which declined to consider "whether some types of commercial property are so inherently dangerous that, even in the absence of prior similar incidents, providing security guards will fall within the scope of a landowner's duty of care." (6 Cal.4th 666, 680, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
Defendant contends that plaintiff cites no case finding an open, uncovered commercial parking lot inherently dangerous in the absence of prior criminal activity. Slapin v. Los Angeles International Airport (1976) 65 Cal.App.3d 484, 135 Cal. Rptr. 296 found it "common knowledge" "[t]hat a mugger thrives in dark public places." (Id. at p. 488, 135 Cal.Rptr. 296.) "If defendant so poorly lighted the parking lot as to create a substantial risk of muggings, plaintiff may be able to establish the elements of a cause of action." (Ibid.) "It is quite possible, of course, that plaintiffs in this case will also be unable to prove that the lighting of the parking lot was a concurrent proximate cause of their injuries" in an assault. (Id. at p. 490, 135 Cal.Rptr. 296.) The appellate court noted, "plaintiffs may be able to establish a history of crime at the parking lot which rendered the injury foreseeable." (Id. at p. 489,135 Cal.Rptr. 296.)
In Taylor v. Centennial Bowl, Inc. (1966) 65 Cal.2d 114, 52 Cal.Rptr. 561, 416 P.2d 793, where a bar patron was attacked in the bar's parking lot, a history of crimes and police assistance at the bar was held relevant to establish that the owner "had notice of the danger to his patrons from assault by third persons." (Id. at p. 125, 52 Cal.Rptr. 561, 416 P.2d 793.) Moreover, a bouncer in the bar had actually warned the patron of the very individual who attacked her. (Id. at p. 118, 52 Cal. Rptr. 561, 416 P.2d 793.)
In Isaacs, where a doctor was shot in his hospital's parking lot, "the record contained evidence of prior, violent, third party attacks on persons on the hospital's premises in close proximity to where the attack at issue in that case occurred. (Isaacs, supra, 38 Cal.3d at p. 121 [211 Cal.Rptr. 356, 695 P.2d 653].)" (Ann M., supra, 6 Cal.4th at p. 678, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
In Peterson v. San Francisco Community College Dist. (1984) 36 Cal.3d 799, 205 Cal.Rptr. 842, 685 P.2d 1193, a student was assaulted while ascending stairs in the school's parking lot. (Id. at p. 805, 205 Cal.Rptr. 842, 685 P.2d 1193.) She alleged *928 "that the property was in a dangerous condition because the thick and untrimmed foliage and trees around the parking lot and stairway permitted the assailant to perpetrate his crime" and the property owners were "aware of the condition." (Id. at p. 812, 685 P.2d 1193.) The court noted, "[i]n light of the alleged prior similar incidents in the same area, the defendants were on notice that any woman who might use the stairs or the parking lot would be a potential target." (Id. at p. 814, 685 P.2d 1193.) Since "they were aware of the prior assaults, it is clear that failure to apprise students of those incidents, to trim the foliage, or to take other protective measures closely connects the defendants' conduct with plaintiffs injury." (Id. at p. 814, 685 P.2d 1193.)
Ann M. observed, "Unfortunately, random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable." (6 Cal.4th 666, 678, 25 Cal.Rptr.2d 137, 863 P.2d 207.) To hold a property owner legally liable for a crime occurring on his or her premises, the law requires that the owner should have "reasonably anticipated" the crime. (Id. at p. 676, 25 Cal.Rptr.2d 137, 863 P.2d 207.) "[T]he requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises." (Id. at p. 679, 25 Cal.Rptr.2d 137, 863 P.2d 207, fn. omitted.) On the record before us, we conclude that the low lighting and overgrown bushes alone did not make the property inherently dangerous and further that these circumstances were not cause for the property owner to reasonably anticipate crime in the absence of prior similar incidents.
Plaintiff relies on Robison v. Six Flags Theme Parks Inc. (1998) 64 Cal.App.4th 1294, 75 Cal.Rptr.2d 838, which concerned "an accident which occurred when an out-of-control car left the parking area at the Magic Mountain amusement park, entered a picnic area, and struck a picnic bench." (Id. at p. 1296, 75 Cal.Rptr.2d 838.) Robison distinguished Ann M., reasoning: "Crime can happen anywhere, but cars cannot crash into picnic tables just anywhere. In order for a car to crash into a picnic table, the picnic table must first be placed in harm's way. If traffic and picnic tables are placed in a configuration in which the cars can hit the tables, the resulting danger can be identified by simple observation.... When such an observable danger ripens into an accident, the accident is foreseeable for purposes of duty analysis. There is no legal requirement in such circumstances for the type of heightened notice which might be provided by a prior similar incident, as Ann M. found may be necessary in instances of third party crime. Instead, the debatable issue usually posed by such circumstances is whether the landowner took reasonable precautions in light of the observable danger presented." (Id. at p. 1301, 75 Cal. Rptr.2d 838.) The circumstances before us are very different.
Unfortunately, plaintiff was the victim of the first recorded criminal assault in the Sears parking lot. Under the circumstances of this case, we conclude that Sears could not have reasonably anticipated the crime and was under no duty to prevent it.
In light of this conclusion, we do not consider the trial court's alternate argument for summary judgment, that Sears did not cause plaintiffs assault. (Nola M. v. University of Southern California (1993) 16 Cal.App.4th 421, 427, 20 Cal. Rptr.2d 97; Leslie G. v. Perry & Associates (1996) 43 Cal.App.4th 472, 481, 50 Cal.Rptr.2d 785.)

DISPOSITION
The judgment is affirmed. Sears is to recover costs on appeal.
WUNDERLICH, J., and MIHARA, J., concur.
NOTES
[1] The summary judgment motion was based partly on excerpts from plaintiff's deposition. During her deposition, plaintiff clarified locations by referring to a diagram which is not in the record on appeal.
[2] In the trial court, plaintiff relied on Sharon P. v. Arman, Ltd. in successfully opposing Sears's first summary judgment motion. That case purported to address an issue unresolved by Ann M., whether a commercial parking garage is inherently dangerous, so that security precautions should be taken in the absence of a prior similar incident. The California Supreme Court subsequently granted review on October 22, 1997 (S063612), and that case remains pending. [For Supreme Court opinion, see 21 Cal.4th 1181, 91 Cal.Rptr.2d 35, 989 P.2d 121.] After the Supreme Court granted review, Sears renewed its summary judgment motion.
[3] For purposes of this discussion, we will assume that these facts about the conditions of defendant's premises are undisputed. Defendant argues only that they are uncorroborated. We note that plaintiff did not claim they were undisputed in a responsive statement of disputed facts. (See Code Civ. Proa, § 437c, subd. (b).)