Filed 6/28/21  Jeronimo v. Alliance Credit Union CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARIA GUADALUPE JERONIMO et al., | |
| Plaintiffs and Appellants, | G060140 |
| v. | (Super. Ct. No. 17CV316303) |
| ALLIANCE CREDIT UNION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Santa Clara County, Theodore C. Zayner, Judge.  Affirmed.

Law Office of Christopher D'Anjou and Christopher J. D'Anjou for Plaintiffs and Appellants.

McCaffery │Hosking, Timothy J. McCaffery and Jason B. Shane for Defendant and Respondent Alliance Credit Union.

## INTRODUCTION

Maria Guadalupe Jeronimo and five other plaintiffs appeal from a judgment of dismissal entered after the court sustained the demurrer of Alliance Credit Union without leave to amend. Jeronimo sued Alliance and others after her husband was killed in a two-car collision while he was working at Alliance.

The trial court held that the accident was not foreseeable and therefore Alliance had no duty to the decedent. Having already given Jeronimo chances to amend to state a cause of action, the court sustained Alliance's demurrer to the third amended complaint without leave to amend.

We affirm the judgment. The allegations of the third amended complaint do not establish that the accident was reasonably foreseeable to the extent that Alliance had a duty to guard against it. Duty is both a question of law for the court and an essential element of any negligence-based cause of action, so the ruling Jeronimo had failed to establish Alliance's duty doomed Jeronimo's third amended complaint as to Alliance.

## FACTS

On November 11, 2016, Leonardo Jeronimo Calderon, a commercial painter, was working on a job inside Alliance's front entrance, located near a busy intersection. Two cars collided in the intersection; one of the cars crashed through Alliance's entrance and killed him.[1] Calderon's wife, Maria Jeronimo, and his five daughters sued several defendants, among them Alliance. The causes of action alleged against Alliance were negligence, premises liability, and wrongful death and survival.

Alliance demurred to the third amended complaint, after its demurrer to the second amended complaint was sustained with leave to amend. The core issue was

---

[1] Jeronimo's first and second amended complaints alleged that the car that struck Calderon "drove through the entrance" of the credit union. In the third amended complaint, this allegation was omitted. Instead, Jeronimo alleged that Calderon was "using and or waiting in and around the entrance . . . to perform his duties as a painter," possibly implying he was outside the building.

2

whether injury by a vehicle that had left the roadway was foreseeable and therefore whether Alliance had a duty to prevent it. The court issued a 15-page order explaining in detail the reasoning behind its conclusion that Alliance had no such duty and explaining why it was not going to allow Jeronimo to amend again. Judgment in Alliance's favor was entered on November 8, 2018.

## DISCUSSION

We review a judgment following an order sustaining a demurrer as a question of law. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.) All the causes of action alleged against Alliance are negligence-based, and "'[t]he threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. [Citations.] Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court. [Citations.]'" (*Quelimane Co. v. Stewart Title Guaranty Co*. (1998) 19 Cal.4th 26, 57; see also Civ. Code, § 1714, subd. (a).)

In *Rowland v. Christian* (1968) 69 Cal.2d 108, the Supreme Court explained that "the major [factors in determining the existence of a duty] are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]" (*Id.* at p. 113, superseded by statute on other grounds in *Smith v. Freund* (2011) 192 Cal.App.4th 466.)

"The foreseeability of a particular kind of harm plays a very significant role in [the duty] calculus [citation], but a court's task – in determining 'duty' – is not to

3

decide whether a particular plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572–573, fn. 6; see also *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 772-773 (*Cabral*).)

There is a nationwide body of law regarding vehicles veering off the street and hitting people on sidewalks or in front of buildings. So extensive is this body of law that this court was able to distill the unusual circumstances under which courts held the owner of the property on which people were standing when they were hit had a duty to protect them from this hazard. In *Jefferson v. Qwik Korner Market, Inc.* (1994) 28 Cal.App.4th 990 (*Jefferson*), we dealt with a case in which a boy was injured when a driver parking his car accidentally stepped on the gas instead of the brake, causing his car to jump a concrete parking block and then the curb. (*Id.* at p. 992.) After surveying cases on this subject, we concluded that in most cases the accident was not foreseeable, and thus the property owner had no duty to guard against it. (*Id.* at p. 993.) The minority cases holding that the property owner did or might have a duty to prevent such accidents were those in which (1) the business provided no protection whatsoever (e.g., a curb) from encroaching vehicles, (2) a similar accident had occurred prior to the one in question, or (3) the building design required customers to wait for service near a road or parking lot. (*Id.* at pp. 994-995.) Since none of these circumstances applied in *Jefferson*, the accident was not foreseeable, and the owner had no duty to protect people from vehicles going off the road. (*Id.* at p. 997.)

The question now before us, then, is whether Alliance had a duty to protect someone inside its building not from a car leaving the roadway, jumping a curb, and winding up on the sidewalk but rather from a car leaving the roadway, jumping a curb,

4

and crashing through the entrance of a building.[2]  To put it another way, how likely is it that a negligent driver will drive through the entrance of a commercial building and hit someone inside?  Is it so likely that the building owner has a duty to take precautions against such an action and is negligent if it does not do so?  "[A] duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated."  (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676, overruled on other grounds in *Reid v. Google, Inc*. (2010) 50 Cal.4th 512.)

Jeronimo argues that Alliance should have installed concrete bollards in front of the building entrance, and she included allegations about a bill approved in 2016 that permitted insurance companies to offer discounts to commercial property owners that installed vehicle barriers.  (See Ins. Code, § 11895.)  She cites two cases in which the commercial property owner was found to have a duty to protect its pedestrian customers from runaway vehicles:  *Bigbee v. Pacific Tel. & Tel. Co*. (1983) 34 Cal.3d 49 (*Bigbee*) and *Robison v. Six Flags Theme Parks Inc*. (1998) 64 Cal.App.4th 1294 (*Robison*).  In addition, Jeronimo relies heavily on *Cabral, supra,* 51 Cal.4th 764, a case in which a freeway driver collided with a truck parked on the shoulder.

In *Bigbee*, the plaintiff sued telephone-related companies for injuries suffered when a drunk driver crashed into the telephone booth in which he was standing.  (*Bigbee, supra,* 34 Cal.3d at p. 52.)  In light of the booth's placement, close to a busy street, *and because a car had crashed into the phone booth in the past*, the court held that there was an issue of fact as to whether another car crashing into the booth was

---

[2]     Omitting the allegation that Calderon was struck when a car "drove through the entrance" of the credit union, in order to make the case conform to the third *Jefferson* exception (customers required to wait outside for service), does not erase the allegation.  Leaving out inconvenient facts from an amended complaint without explanation invokes the "sham pleading" doctrine and allows the trial court to read the previous allegations into the amended complaint.  (See *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 383-384.)

foreseeable.[3] (*Id.* at p. 58.) The court reversed the defendants' summary judgment. (*Id.* at p. 60.)

In *Robison*, a group of people was sitting at a table in the Magic Mountain picnic area – a grassy island in the middle of the paved parking lot – when a car that was supposed to stop and turn at a T intersection plowed straight ahead and struck the table, injuring the picnickers. There was no barrier of any kind between the picnic area and the parking lot. (*Robison, supra,* 64 Cal.App.4th at pp. 1296-1297.) The court framed the foreseeability issue as "whether it was reasonably foreseeable, in view of the configuration and use of the parking lot and picnic area, that a car might fail to turn left at the word 'stop' painted on the pavement, and that picnickers might be injured as a consequence of Magic Mountain's failure to provide an appropriate separation between the parking lot and the picnic area," or, more succinctly, "an errant car hitting an unprotected picnic table." (*Id.* at p. 1299.) Holding that the injury was foreseeable, the court reversed the defense summary judgment. (*Id.* at pp. 1304-1305.)

In *Cabral*, the plaintiff's decedent left the freeway lane in which he was driving, drove on the shoulder, and collided with a parked truck. (*Cabral, supra,* 51 Cal.4th at p. 769.) At the outset, the court held it "clearly foreseeable" that "a vehicle parked by the side of a freeway may be struck by another vehicle leaving the freeway, resulting in injury to either vehicle's occupants . . . ."[4] (*Id.* at p. 775.) In rejecting defendant's "parade of horribles" if such an accident was deemed foreseeable, the court adopted the plaintiff's view that "'freeways are radically different in their purpose and design from other public roads,' making extrapolation of liability rules from freeways to other urban, suburban, or rural roads an uncertain exercise at best." (*Id.* at p. 783.)

---

[3] In addition, the door to the booth was stuck, so the plaintiff could not get out when he saw the car coming at him. (*Bigbee, supra,* 34 Cal.3d at p. 53.)

[4] Or, as the court formulated the issue further on, "whether it is generally foreseeable that a vehicle stopped alongside a freeway may be hit by one departing, out of control, from the road." (*Cabral, supra,* 51 Cal.4th at p. 777.)

6

While *Cabral* is useful for a generalized discussion of duty and foreseeability, it is of no help to Jeronimo in establishing foreseeability in this case. The court clearly limited its finding of foreseeability to freeways and *explicitly* disclaimed an application to urban roads. The other aspect of *Cabral* that differentiates it from this case is that the negligence in question involved only two people: the driver of the parked truck and the driver of the car that hit the truck. Thus the "exception to the general rule of Civil Code section 1714" that the court contemplated was "whether a categorical exception to that general rule should be made exempting drivers from potential liability to other freeway users for stopping alongside a freeway."[5] (*Cabral, supra,* 51 Cal.4th at pp. 771, 774.)

In this case, however, the issue is the foreseeability of a third party's negligence and Alliance's duty to protect a person in its office from someone else's negligent driving. As other courts have stated, "Commercial property owners are not insurers of the safety of their patrons, although they owe the patrons duties 'to exercise reasonable care in keeping the premises reasonably safe.' [Citation.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 431.) "Because the owner is not the insurer of the visitor's personal safety [citation], the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206.)

We think *Jefferson* provides the correct analytical framework for this case. As we noted in that case, the majority rule is that the property owner is not responsible for an injury from a vehicle leaving the road. The two cases cited by Jeronimo, in which the injury was or might be foreseeable, conform to the exceptions we recognized in *Jefferson.* In *Bigbee,* a similar accident had previously occurred, and in *Robison,* there

---

[5]     Civil Code section 1714, subdivision (a), provides, in pertinent part, " Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ."

was no barrier whatsoever between the road and the picnic area. In this case, however, Calderon was apparently working inside the building when he was struck, although the third amended complaint aims to create the impression that he was standing outside at the entrance. There were, in fact, *two* barriers to the car – the curb and the front of the building itself. Far from being reasonably foreseeable, the accident in this case would almost certainly be characterized by most people as "freak."

Jeronimo distinguishes *Jefferson* in part because it ignores the effect of "prior similar accidents," presumably to establish Alliance's actual or constructive knowledge of a dangerous condition. In the third amended complaint, she alleged that "there were thirteen other vehicle collisions in an around the intersection . . . and at or near [the Alliance office]" between June 1, 2015, and the accident in November 2016. While vehicle collisions are unfortunately a regular part of modern life, a collision resulting in a car driving through the entrance to a building is not so common. Jeronimo does not allege that any of these prior collisions resulted in a car crashing through the entrance of a building, or even that the collisions involved a car jumping the curb and hitting someone on the sidewalk. Indeed, the counter-argument would be that even where there were collisions – thirteen of them – no one ever plowed into the building.

Jeronimo also attempts to bring the accident within *Jefferson*'s third exception to the general rule – "the building design required customers to await service by standing adjacent to a parking lot[.]" (*Jefferson, supra,* 28 Cal.App.4th at pp. 994-995.) She alleged that the property's entrance design "invited and corralled [visitors] to use, stay or maintain at fixed location with their backs to high speed traffic when using said entrance." Be that as it may, Calderon was not struck while he was standing at the entrance. He was inside the building. Moreover, as the trial court observed, "[T]he necessity of using a particular entrance does not entail a requirement to remain at it or near it for any length of time. In this respect, an entrance is not like a service window, picnic table, or telephone booth. It is not predictable that someone will remain at an

8

entrance for any length of time.  Indeed, the fundamental nature of an entrance or exit is not to encourage anyone to remain but to pass through it."  The trial court got it right.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

9