[No. B125251. Second Dist., Div. Four. Dec. 28, 1999.]

STEPHANI LYNN VICTOR, Plaintiff and Appellant, v.
MICHAEL ALLEN HEDGES et al., Defendants and Respondents.

230

232

**COUNSEL**

Pierry & Moorhead, Joseph P. Pierry and Steven M. Zimmerman for Plaintiff and Appellant.

O'Connor, Schmeltzer & Rose, Lee P. O'Connor and Timothy J. O'Connor for Defendants and Respondents.

**OPINION**

DAU, J.*—Plaintiff Stephani Lynn Victor appeals from the judgment entered in favor of defendants Michael Allen Hedges and Thermtech, Inc. (collectively, Hedges), following the grant of defendants' motion for summary judgment, and from the denial of her motion for new trial. Michael Hedges parked his auto on the sidewalk in front of his apartment building. Plaintiff and Hedges were standing on the sidewalk behind the car, when an inattentive motorist drove over the curb and into plaintiff, seriously injuring

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

her. We are required to decide whether a statute prohibiting the parking of a vehicle on a sidewalk may be employed to fix upon Hedges the presumption of negligence in the circumstances of this case and whether reasonable people could conclude that he subjected plaintiff to an unreasonable risk of harm. We hold the statute in question was not designed to prevent the type of occurrence that resulted in plaintiff's injury, and plaintiff has failed to raise a triable issue of fact that an ordinarily prudent person in Hedges's place would have foreseen an unreasonable risk of harm to plaintiff. Accordingly, we affirm.

## Factual and Procedural Background

Plaintiff brought an action for damages alleging that on the day in question defendant Thermtech owned a certain Ford Explorer and defendant Hedges was driving that vehicle with the owner's consent, that defendant Mark Williams was driving a Ford Aerostar van, and that defendants negligently operated and controlled these vehicles so as to cause a collision with plaintiff, who was lawfully upon the sidewalk in the City of Hermosa Beach.

The undisputed facts showed that at approximately 10:00 p.m. Hedges had parked his Ford Explorer on the sidewalk in front of his apartment building, parallel to, and with the driver's side tires three to four feet from, the curb line of Hermosa Avenue in Hermosa Beach. Hedges did this to show plaintiff his new compact disk player, which was located in the rear of the Explorer. Due to construction, northbound traffic along Hermosa Avenue was routed into a single lane along the east curb. There was some gravel on the road, and the surface was rough with bumps and potholes. Immediately before the accident Williams was northbound on Hermosa Avenue, approaching the intersection with First Street, in his Aerostar van. He looked down at the tape deck and, with his right hand, fast-forwarded a cassette for approximately two seconds. The steering wheel jostled about an inch each way, Williams's van drifted to the right, and the front and rear passenger side tires hit the First Street curb, causing them to blow out; the van continued in its path. Hedges and plaintiff were standing at the rear of the Explorer, with plaintiff nearer the curb and Hedges to her right, when Williams's van ran into plaintiff and the Explorer about 30 feet from the First Street curb.

The trial court granted summary judgment to defendants and denied plaintiff's motion for new trial. On neither motion did the trial court allow counsel to present argument at the hearing.

## Discussion

Plaintiff's claim against Hedges and Thermtech is based on theories of negligence per se and common law negligence. Defendants argued in the

court below that a necessary element of plaintiff's case under either theory—proximate cause—could not be established. We will first identify the standard of review appropriate to summary judgment. Then we will address the negligence per se issue before coming to that of ordinary negligence. We do this, even though the proximate cause argument (which is focused on foreseeability) made by the parties is common to both, for the following reason: If Hedges is not to be presumed negligent, and we will conclude that he is not, the ordinary negligence analysis may proceed uncontaminated by the infraction charge.

## A. *Standard of Review*

The granting of a summary judgment motion by the superior court is subject to independent review. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766].) We consider "all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) "To succeed, the defendant[s] must . . . demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46], cert. den. (1989) 490 U.S. 1084 [109 S.Ct. 2110, 104 L.Ed.2d 670].) "We apply the same three-step analysis required of the trial court: 'First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Zuckerman v. Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1400-1401 [232 Cal.Rptr. 458], quoting *AARTS Productions, Inc. v. Crocker Nat. Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

## B. *Negligence Per Se*

Plaintiff argues that Hedges must be presumed negligent because he violated Vehicle Code section 22500, subdivision (f),[1] which prohibits parking on a sidewalk.

Section 669, subdivision (a) of the Evidence Code provides: "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute

---

[1]Unless otherwise indicated, all statutory references are to the Vehicle Code (Code).

. . . [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute . . . was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute . . . was adopted." With respect to paragraphs (3) and (4), the Law Revision Commission Comments state: "Whether the death or injury involved in an action resulted from an occurrence of the nature which the statute . . . was designed to prevent . . . and whether the plaintiff was one of the class of persons for whose protection the statute . . . was adopted are questions of law. Nunneley v. Edgar Hotel, 36 Cal 2d 493, 225 P.2d 497 (1950) (statute requiring parapet of particular height at roofline of vent shaft designed to protect against walking into shaft, not against falling into shaft while sitting on parapet). . . ." (Cal. Law Revision Com. com., reprinted at 29B West's Ann. Evid. Code (1995 ed.) foll. § 669, p. 665.)

At the time of the accident, section 22500 provided: "No person shall stop, park, or leave standing any vehicle whether attended or unattended, except when necessary to avoid conflict with other traffic or in compliance with the directions of a peace officer or official traffic control device, in any of the following places: [¶] . . . [¶] (f) On a sidewalk, except electric carts when authorized by local ordinance, as specified in Section 21114.5."[2]

We are required to determine the nature of the occurrence that section 22500, subdivision (f) was designed to prevent.[3] Although substantially identical provisions exist in many states,[4] we have found no case addressing this issue.

Section 22500 designates 12 categories of locations where stopping, standing or parking a vehicle is prohibited. The Legislature specified certain

[2]Section 21114.5 provides: "Notwithstanding Section 21663 or any other provision of this code, local authorities may, by ordinance, authorize the operation of electric carts by physically disabled persons, by persons 50 years of age or older, or, while in the course of their employment, by employees of the United States Postal Service, state and local governmental agencies, or utility companies, on public sidewalks. . . ."

Section 21663 provides: "Except as expressly permitted pursuant to this code, including Sections 21100.4 and 21114.5, no person shall operate or move a motor vehicle upon a sidewalk except as may be necessary to enter or leave adjacent property." Section 21100.4 permits local authorities to adopt rules "regarding the operation of electric carts on the public sidewalks by employees of the United States Postal Service, state and local governmental agencies, or utility companies, while in the course of their employment."

[3]Subdivision (f) was amended in 1998. The amendment is discussed in the text and associated footnote 10, *post*.

[4]This provision substantially conforms with section 11-1003 of the Uniform Vehicle Code as amended in 1930 (U. Veh. Code Ann. (1967) § 11-1003).

of these with pedestrians obviously in mind. "On a sidewalk" (*id.*, subd. (f)), which the Code defines as "that portion of a highway, other than the roadway, set apart by curbs, barriers, markings or other delineation for pedestrian travel" (§ 555), is one of these.[5] Others are: "[o]n a crosswalk" (§ 22500, subd. (b)); "[b]etween a safety zone and the adjacent right-hand curb" (*id.*, subd. (c)); "[a]longside curb space authorized for the loading and unloading of passengers of a bus engaged as a common carrier in local transportation" (*id.*, subd. (i)); and "[i]n front of that portion of a curb that has been cut down, lowered, or constructed to provide wheelchair accessibility to the sidewalk . . . ." (*Id.*, subd. (*l*).)[6] With the exception of "[o]n a sidewalk" (*Id.*, subd. (f)), vehicles normally operate within each of these designated categories, and, for these, the section's prohibition appears designed both to prevent vehicular obstruction of pedestrian traffic and to lessen the danger of vehicle-pedestrian collision. Thus pedestrians finding it necessary to walk around a vehicle that is illegally parked, stopped or left standing may be put at increased risk of injury from unsure footing,[7] from another vehicle in the roadway,[8] or from the sudden movement of the vehicle

[5]A "pedestrian" is "any person who is afoot or who is using a means of conveyance propelled by human power other than a bicycle." (§ 467, subd. (a).) A "pedestrian" includes "any person who is operating a self-propelled wheelchair, invalid tricycle, or motorized quadricycle and, by reason of physical disability, is otherwise unable to move about as a pedestrian, as specified in subdivision (a)." (§ 467, subd. (b).)

The Code defines "highway" and "street" in the same terms: "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." (§§ 360, 590.) The Code defines "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel." (§ 530.) In general usage, a city street is a "roadway" from curb to curb. (*Shachunazarian v. Widmer* (1958) 159 Cal.App.2d 180, 182 [323 P.2d 865].)

[6]Categories less directly related to pedestrians are: "[w]ithin an intersection" (§ 22500, subd. (a)); "[w]ithin 15 feet of the driveway entrance to any fire station" (subd. (d)); "[i]n front of a public or private driveway" (*id.*, subd. (e)); "[a]longside or opposite any street or highway excavation or obstruction when such stopping, standing, or parking would obstruct traffic" (*id.*, subd. (g)); "[o]n the roadway side of any vehicle stopped, parked, or standing at the curb or edge of a highway" (*id.*, subd. (h)); "[i]n a tube or tunnel" (*id.*, subd. (j)); and "[u]pon a bridge." (*id.*, subd. (k)).

[7]In *Hartford v. Silverman* (1930) 109 Cal.App. 587 [293 P. 660], the court reversed the sustaining of a demurrer to the complaint, in which the plaintiff alleged that the defendant parked and stopped upon a sidewalk and refused, upon request, to move into the driveway so that plaintiff could proceed along the sidewalk, and that when she walked around the automobile, one of her feet slipped or became caught in a portion of the driveway or curb which she had been unable to see in the darkness, and she was made to fall violently to the pavement. The plaintiff did not argue the violation of a statute regulating parking.

[8]"[A] defendant who blocks the sidewalk and forces the plaintiff to walk in a street where the plaintiff will be exposed to the risks of heavy traffic becomes liable when the plaintiff is run down by a car, even though the car is negligently driven . . . ." (Prosser & Keeton, Torts (5th ed. 1984) § 44, pp. 304-305.)

In *Parker v. City & County of San Francisco* (1958) 158 Cal.App.2d 597 [323 P.2d 108], a United Parcel Service truck parked alongside curb space authorized for the loading and

that had been at rest.[9] Hedges's parked automobile did not obstruct plaintiff's way and increase her risk of injury in this fashion.

Injury to a pedestrian on a sidewalk, resulting from contact with a vehicle that has been parked, stopped or left standing there, can also occur when the vehicle is at rest or when it is again put in motion. The Legislature's 1998 amendment to subdivision (f) of section 22500 appears to reflect an awareness that a vehicle at rest, even if partially on the sidewalk, can cause injury to a passing pedestrian.[10] In this situation, the pedestrian, insufficiently

---

unloading of passengers of a bus, in violation of the predecessor to section 22500, subdivision (i), so that the bus discharged passengers 10½ feet from the curb. One McKay was proceeding downhill behind the bus when the brakes on his car went out, and he pinned the plaintiff, who was alighting from the front of the bus, between his car and the truck. The bus driver testified that he knew he was violating an ordinance and company rule in parking so far from the curb. (158 Cal.App.2d at p. 608.) The plaintiff did not sue United Parcel Service. The jury returned a verdict in favor of the plaintiff and against the defendant city and county. The trial court granted judgment notwithstanding the verdict to the defendant, and the Court of Appeal reversed, holding that foreseeability was a question of fact for the jury. (*Id.*, at p. 611.)

In *McKay v. Hedger* (1934) 139 Cal.App. 266 [34 P.2d 221], *A* double-parked his ice truck to make a delivery, in violation of a statute (Veh. Act, former § 138, the predecessor to Veh. Code, § 22500, subd. (h)); the truck was left standing mid-street when the vehicle parked alongside the curb drove off. The plaintiff and other children gathered at the rear of the ice truck to get pieces of ice, and the plaintiff ran from behind the ice truck into the path of *B's* automobile, which was approaching from the direction that *A's* truck was facing. *B* struck and injured the plaintiff. The verdict was in favor of the plaintiff, and *A* appealed from judgment. The Court of Appeal affirmed, rejecting *A's* argument that the statute was for the benefit of drivers lawfully parked next to the curb, and not for the benefit of other persons using the street: "The vehicular and pedestrian traffic lawfully upon a street is entitled to the unobstructed use of as much of the roadway as may be conveniently afforded. . . . The enactment in question was undoubtedly passed for the benefit of all [such] persons . . . ." (139 Cal.App. at p. 273.) This is the extent of the court's analysis on this point, and we conclude it is not applicable to subdivision (f) of section 22500.

[9]An example of the latter situation is found in *Fowler v. Callis* (1958) 159 Cal.App.2d 746 [324 P.2d 728]. The plaintiff was standing on the sidewalk, leaning against the bus stop sign while waiting for a bus. A garage employee parked a car being serviced partially on the sidewalk, 25 feet from the plaintiff. The employee engaged the emergency brake, left the key in the ignition, and left the car, which had a stick shift, in gear, but did not inform the owner of these facts. The owner got into the car, apparently to turn on the heater. The car veered backward in a straight line at considerable speed and struck the metal bus stop sign. The plaintiff, who was critically injured when the metal pole of the sign fell on her, sued the garage and the owner. The court noted that the vehicle was parked in violation of the predecessor to section 22500, subdivision (f) (former § 586) and stated that "plaintiff was clearly within the protection of that statute . . . ." (159 Cal.App.2d at p. 749.) The jury apparently found no proximate cause, and the court held the evidence was sufficient to support the verdict. (*Id.* at p. 750.) The court's instructions to the jury are not reflected in the opinion.

[10]Plaintiff argues that the amendment, which was not in effect at the time of the accident in this case, clarifies the Legislature's original intent. The amendment makes more explicit what is meant by "[o]n a sidewalk." (Italics added.) Subdivision (f), as amended, is reproduced here with the language added in italics. "(f) On *any portion of a sidewalk, or with the body of*

aware of the presence of the vehicle, walks into it, or a portion of it, and is injured. That is not what occurred in the case at bar. Here, plaintiff was inspecting the Explorer's compact disk player when she was struck by another vehicle, which ran into her and the Explorer.

We conclude that subdivision (f) of section 22500 was designed to prevent (1) vehicular obstruction of pedestrian traffic on sidewalks, and (2) injury to pedestrians that might occur when a pedestrian (a) walks around the obstructing vehicle and is injured by another hazard, (b) walks into the obstructing vehicle, or (c) is struck when the vehicle, previously at rest on the sidewalk, is put in motion. The section was not designed to prevent the type of occurrence that resulted in plaintiff's injury in this case—being struck on the sidewalk by a vehicle other than the illegally parked vehicle.[11] Accordingly, the court correctly denied to plaintiff the presumption, available under Evidence Code section 669, that defendants failed to exercise due care.

## C. *Ordinary Negligence*

■ We turn now to the issue of ordinary negligence. "Actionable negligence is traditionally regarded as involving the following: (a) a *legal duty* to use due care; (b) a *breach* of such legal duty; (c) the breach as the *proximate or legal cause* of the resulting injury. [Citations.] [¶] The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in the activities from which harm might reasonably be anticipated. [Citation.] (b) An affirmative duty where the person occupies a particular relationship to others. [Citation.] In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, pp. 60-61, italics in original.)

The Restatement sets forth the elements of a cause of action for negligence as follows: "The actor is liable for an invasion of an interest of

*the vehicle extending over any portion of* a sidewalk, except electric carts when authorized by local ordinance, as specified in section 21114.5. *Lights, mirrors, or devices that are required to be mounted upon a vehicle under this code may extend from the body of the vehicle over the sidewalk to a distance of not more than 10 inches.*" (Stats. 1998, ch. 877, § 66.)

[11]Plaintiff submitted the declaration of Reuben Vollmer, an accident reconstruction expert, who stated that in his opinion the injuries suffered by plaintiff resulted from an occurrence the nature of which section 22500, subdivision (f) was designed to prevent. This issue is not properly the subject of expert testimony, as it presents a question of law for the court. (*Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 498 [225 P.2d 497] [by implication]; Evid. Code, § 801 [expert testimony admissible to "assist the trier of fact"].) Plaintiff contends to the contrary, but she cites no authority for that proposition. Her argument on this issue is to the effect that Vollmer is entitled to testify to causation, which is something other than what he seeks to address here. Plaintiff's contention that Vollmer is entitled to testify to a question of law does not go so far as to argue that we are required to accept his opinion.

another, if: [¶] (a) the interest invaded is protected against unintentional invasion, and [¶] (b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and [¶] (c) the actor's conduct is a legal cause of the invasion, and [¶] (d) the other has not so conducted himself as to disable himself from bringing an action for such invasion." (Rest.2d Torts, § 281.) "[N]egligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." (*Id.*, § 282.) Only those circumstances which the actor perceives or should perceive at the time of his or her action are to be considered in determining whether the actor should recognize the risks that are involved in his or her conduct. (*Id.*, § 282, com. h, p. 12.) The actor is required to give his surroundings the attention which the average person in the community would give under like circumstances and such superior attention as the actor himself or herself has. (*Id.*, § 289.) "For the purpose of determining whether the actor should recognize that his [or her] conduct involves a risk," the actor is required to know "the qualities and habits of human beings . . . and the qualities, characteristics, and capacities of things and forces in so far as they are matters of common knowledge at the time and in the community . . . ." (*Id.*, § 290, subd. (a).)

■ Plaintiff contends the following undisputed facts are sufficient to defeat defendants' summary judgment motion: Hedges took plaintiff to the sidewalk in front of his apartment about 10:00 p.m., to see the compact disk player in his car, and stood with plaintiff on the sidewalk within three to four feet of the curb, knowing that the street was undergoing construction, such that traffic was reduced to one lane and the surface of the road had some gravel upon it and was bumpy. In the half-block south of his apartment building Hedges had observed between five and ten dirt mounds; the mounds were six to eight feet in height and four to five feet on the other side of the traffic lane. Hedges acknowledged that due to bumps and potholes in the street, sometimes his car would act a little "squirrelly," causing "momentary [loss of] control of the vehicle for a split second."[12]

Defendants contended in the court below that plaintiff could not establish that Hedges's conduct was the legal or proximate cause of plaintiff's injury.

---

[12]We acknowledge that plaintiff points to some additional claimed defects in the road, but the record contains no evidence to show that they were either observed by Hedges or would have been observed by the average person in the community. For example, through *expert* declarations plaintiff demonstrates that, because of the size of the travel lane, the storage of construction materials to the left side of the roadway, and the inadequate delineation of that side of the roadway, the Williams van was "force[d] . . . to bias to the right side of the traveled lane," and an asphalt overhang at the gutter caused the van "to drift farther to the right into the curb." This drifting, says plaintiff's expert, would be predicted based on traffic engineering human factors but would be "undetectable to the driver who was momentarily diverted." The expert concludes that the accident was the fault of the City of Hermosa Beach and those involved in the construction project. In regard to this road, Hedges does not bear the same duty vis-à-vis plaintiff as those actors. (See, e.g., Rest.2d Torts, §§ 289, 290; Gov.

The parties have argued almost exclusively "intervening cause" cases focusing on the concept of "foreseeability," with each side contending for its own favorites.

Plaintiff relies primarily upon three cases: *Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49 [192 Cal.Rptr. 857, 665 P.2d 947]; *Robison v. Six Flags Theme Parks Inc.* (1998) 64 Cal.App.4th 1294 [75 Cal.Rptr.2d 838]; and *Curreri v. City etc. of San Francisco* (1968) 262 Cal.App.2d 603 [69 Cal.Rptr. 20]. In *Bigbee* the telephone company had installed a public phone booth in the parking lot of a liquor store 15 feet from the curb line bordering a major thoroughfare, which had a posted speed limit of 35 or 40 miles per hour. The plaintiff was injured when a car driven by an intoxicated person veered off the street and crashed into the booth, in which the plaintiff was standing. The plaintiff saw the car coming but could not escape from the booth because the door stuck. The plaintiff contended the placement of the booth created an unreasonable risk of harm to anyone using it. Another booth in the same location had previously been struck by a car under circumstances not developed. The trial court granted summary judgment to the phone company. The Supreme Court reversed, holding that there was room for a reasonable difference of opinion as to whether the risk that a car might crash into the booth and injure a person inside was reasonably foreseeable under these circumstances. (*Bigbee v. Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 59.) The court noted that the phone company was an invitor, and plaintiff, an invitee, and that " 'one who invites another to do business with him owes the invitee the duty to exercise reasonable care to prevent his being injured on "the premises." ' " (*Id.* at p. 55, fn. 8.)

In *Robison v. Six Flags Theme Parks Inc., supra,* 64 Cal.App.4th 1294, Magic Mountain maintained, within its large, paved parking lot and in line with the traffic flow (which was regulated with a speed limit of 25 miles per hour), an uncurbed, flat grassy area with tables for picnickers. The plaintiffs, picnicking at a table, were injured when a runaway car traveled over the word "stop" painted on the pavement and crossed 40 feet of grass before coming to rest atop their table. The car, which had a dysfunctional starter motor, had been push-started and had, at the wheel, a developmentally disabled woman who had never driven a car before and did not know what to do once it started. The trial court granted summary judgment to Magic Mountain. Division Two of this district reversed, holding that the unique circumstances of the accident were not controlling and concluding that "it

Code, §§ 835 [relating to liability of public entity for injury caused by dangerous condition of property], 815.4 [relating to liability of public entity for injury caused by tortious act or omission of its independent contractor].)

was open to simple observation that Magic Mountain had aimed a heavily traveled parking lane (with a speed limit of 25 miles per hour) directly at the picnic table with no separation other than 40 feet of flat grass, and that a car traveling at a speed no higher than Magic Mountain's own speed limit would cover this distance in less than 2 seconds . . . . When such an observable danger ripens into an accident, the accident is foreseeable for purposes of duty analysis." (*Id.* at p. 1301.) The court noted that, insofar as the placement issue, the case was similar to *Bigbee.* (*Id.* at p. 1299, fn. 1.)

The *Robison* court relied upon two principles stated in Witkin. (64 Cal.App.4th at pp. 1304-1305.) They are: "Liability is particularly appropriate where the landowner has actual knowledge of the danger, e.g., where he has created the condition." (6 Witkin, Summary of Cal. Law, *supra*, Torts, § 925, at p. 296.) "Conduct is negligent where some unreasonable risk of danger to others would have been foreseen by a reasonable person." (*Id.*, at § 751, at p. 89.)[13]

In *Curreri v. City etc. of San Francisco, supra*, 262 Cal.App.2d at page 605, the plaintiff was sitting on the front steps of her flat on the north side of Greenwich Street. This street sloped steeply downhill toward the east, and cars were parked at right angle to the curb. Basili was attempting to exit from his parking space, and he changed gears from reverse to drive in an effort to realign the car so it would clear the cars parked close by on each side. When he tried to stop, his foot slipped downhill from the brake to the accelerator. His car jumped forward across the curb, which was only two to three inches high, and struck the plaintiff. The city had installed the curb when its standard specifications did not address the issue of curb height. These standards provided for a normal curb of six inches at the time of the accident. The plaintiff charged the city with negligence in regard to the curb, street, and sidewalk, and alleged that a dangerous condition existed. The trial court granted summary judgment to the city. The Court of Appeal reversed, holding Basili's negligence did not preclude the possibility of a finding against the city and that reasonable persons could conclude the city had permitted a dangerous condition to exist, that such condition was a concurring proximate cause of the injury, and that the risk to those lawfully on the sidewalk and adjoining property was foreseeable. (*Id.* at pp. 612-614.) With respect to causation, the *Curreri* court said: "Whether a high curb [or other measures that could have been taken by the city] were precautions which should have been foreseen [and which would] have prevented the accident is, of course, unknown." (*Id.* at p. 611.)

---

[13]This is the rule set forth in section 282 of the Restatement Second of Torts, quoted *ante.*

Unlike the defendants in the cases relied upon by plaintiff, Hedges is not a business invitor or a landowner[14] who has created, or allowed to exist, a dangerous condition, and he is not shown to have any other "special relationship" vis-à-vis plaintiff, which might give rise to a duty to correct a dangerous condition. (See 6 Witkin, Summary of Cal. Law, *supra*, Torts, §§ 858-964, pp. 220-354.) In this situation, Hedges "is not liable unless he is actively careless." (See *id.*, § 732, at pp. 60-61.)

Defendants argue only one case in support of their position, *Schrimscher v. Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125]. The defendant in that case was involved in a collision with another vehicle on the freeway. The defendant was intoxicated at the time, and his negligence caused the accident. The plaintiff, a highway patrolman, spotted the defendant's car partially on the freeway and instructed him to move it to a position that was completely off the freeway. Twenty minutes later, while the plaintiff was still conducting his investigation, a car driven by Shelton, who was also under the influence of alcohol, veered off the freeway and struck the defendant's car, knocking it into the plaintiff. The trial court granted summary judgment to the defendant, finding that his previous negligence was not a proximate cause of the plaintiff's injuries. Division Two of this district affirmed, applying an intervening cause analysis: "An intervening cause which breaks the chain of causation from the original negligent act is itself regarded as the proximate cause of the injury and relieves the original negligent actor of liability. . . . [¶] The general test of whether an independent intervening act, which operates to produce an injury, breaks the chain of causation is the foreseeability of that act. . . ." (*Id.* at p. 664, citations omitted.) The court held there could be no reasonable difference of opinion as to the foreseeability of Shelton's intervening act at the time of defendant's negligence, and that, as a matter of law, the chain of causation was broken. (*Ibid.*)

The cases relied upon by the parties are focused upon determining whether the defendant's conduct was the cause of the injury, and we believe that in the case at bar the proper focus lies elsewhere. ██ "There is a clear distinction . . . between the problem of foreseeability of intervening causes in determining whether the defendant's conduct was the proximate cause of an injury, and the problem of foreseeability in determining whether

---

[14]Plaintiff also relies upon *Barker v. Wah Low* (1971) 19 Cal.App.3d 710 [97 Cal.Rptr. 85]. This case is discussed in *Robison v. Six Flags Theme Parks Inc.*, *supra*, 64 Cal.App.4th at page 1303, and it too involved the duty of a possessor of land. Although Hedges is presumably the lessee of his apartment, he is not legally responsible for the dangerous condition of the street, which would be the responsibility of the city. (See, e.g., Gov. Code, § 835.) We will address later in this opinion whether the placement of Hedges's car increased the risk of harm to plaintiff.

the defendant was negligent at all. In the latter case the problem is whether or not the defendant's conduct was wrongful toward the plaintiff, while in the former it is whether he should be relieved of responsibility for an admitted wrong because another's wrongful conduct also contributed to the injury." (*Richards v. Stanley* (1954) 43 Cal.2d 60, 68-69 [271 P.2d 23].) Where it is contended that the element of foreseeability is determinative of proximate cause, the court "should . . . approach the problem as one of determining the nature of the duty and the scope of the risk of the negligent conduct." (*Schwartz v. Helms Bakery Limited* (1967) 67 Cal.2d 232, 240-241 [60 Cal.Rptr. 510, 430 P.2d 68], fn. omitted.)

 For Hedges to be liable for negligence, his conduct must have fallen below the standard established by law for the protection of those in plaintiff's situation against "unreasonable risk of harm." (Rest.2d Torts, § 282.) Plaintiff argues that Hedges should have foreseen the likelihood that another vehicle would lose control and come onto the public sidewalk where he and plaintiff were standing, a few feet from the curb. This, says plaintiff, was negligence because it was near a road made hazardous by construction activity, which Hedges knew about, and it was foreseeable that these conditions could cause a car to lose control and run onto the curb.

In the circumstances of this case these facts do not raise a triable issue that Hedges's conduct was wrongful toward the plaintiff. Reasonable people would not conclude, from these facts, that Hedges's act of taking plaintiff to the sidewalk subjected her to an unreasonable risk of harm. Plaintiff relies solely upon Hedges's knowledge of the following road conditions to establish his negligence: the street was undergoing construction; traffic was reduced to one lane; the road surface was bumpy and had some gravel upon it; and there were dirt mounds four to five feet to the left of the traffic lane. Plaintiff's *expert* declared that these *and other factors*—deficient size of lane of travel, according to applicable manuals and specifications, inadequate delineation of the left side of the roadway, and the asphalt overhang at the gutter—"bias[ed]" the Williams van to the right side of the road, and that the van's drift to the right could be predicted by traffic engineering human factors. But Hedges is not shown to have had the special knowledge of an expert, and his conduct is not judged by that standard. (See Rest.2d Torts, § 289.) Thus, knowledge of the "bias" condition of the roadway, or of what could have been predicted by using traffic engineering human factors, is superior knowledge that Hedges is not chargeable with.[15] There is no evidence in the record that Hedges was aware of any prior accident in this

---

[15]Illustration 13 of Restatement Second of Torts, section 289, provides an example of the risk that an actor with superior knowledge is required to recognize: "A, a chemist, knows that certain chemicals have such an attraction to one another that if placed near together they are

area,[16] and there is no evidence raising a triable issue of fact that an ordinarily prudent person would have understood that he or she was subjecting plaintiff to an unreasonable risk of harm by standing on the public sidewalk at this location.

The cases relied upon by plaintiff each involved a special relationship, not present here, such as business invitor or a city's responsibility for the condition of streets, curbs, and sidewalks. But even in those situations, a foreseeability analysis such as that used in *Robison v. Six Flags Theme Parks Inc.*, *supra*, 64 Cal.App.4th 1294, would not subject Hedges to liability, because the lane of traffic was not aimed at the point on the sidewalk where Hedges and plaintiff stood.

Plaintiff was wedged between Williams's van and Hedges's Explorer at the moment of impact, which may well have increased the severity of her injuries. It necessarily follows, however, that if Hedges was not negligent in taking plaintiff to this spot, he was not negligent in standing behind the car he had parked there.

We conclude that under the undisputed facts here there can be no reasonable difference of opinion as to whether Hedges subjected plaintiff to an unreasonable risk of harm or as to the foreseeability that a driver would become distracted and, due to road conditions that only qualified experts would be able to detect, run up on the sidewalk in the stretch of road in front of Hedges's apartment.[17] We conclude that defendants were entitled to summary judgment.

## D. *Plaintiff's Other Arguments*

Plaintiff argues vigorously that the judgment should be reversed because the trial court refused to allow counsel to present oral argument at the hearings on defendants' summary judgment motion and plaintiff's motion for new trial, and that the trial court erred in ruling that a motion for new trial will not lie following a grant of summary judgment. These motions were of considerable importance to the parties, and there is no doubt that the

---

apt to generate explosive or inflammable gases. A is required to realize the peril of placing such substances close together, although a layman would not be required to realize this danger."

[16]Plaintiff relies upon a report to the City of Hermosa Beach by a motorist whose right wheels went into the groove created where the raised asphalt covering the road joined the cement along the curb along this stretch of Hermosa Avenue. This was not something Hedges is shown to have known about.

[17]In this situation summary judgment is appropriate. (See Rest.2d Torts, § 285, com. f, p. 22.)

quality of justice and appearance of fairness would have been enhanced had the trial court allowed counsel to present argument. The Fourth District has twice held that courts are required to allow counsel to orally argue summary judgment motions. (See *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 265, 267, fn. 11 [77 Cal.Rptr.2d 781] [Code Civ. Proc., § 437c mandates hearings on summary judgment, and trial judges "may not entirely bar parties from having a say"; "[b]oth written and oral argument are complementary parts of good judging and elemental due process"]; *Gwartz v. Superior Court* (1999) 71 Cal.App.4th 480 [83 Cal.Rptr.2d 865] [same]. Contra, *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 613-614 [43 Cal.Rptr.2d 399], disapproved on other grounds in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609, fn. 5 [71 Cal.Rptr.2d 830, 951 P.2d 399].)[18] There is also authority, which the trial court was apparently unfamiliar with, for the proposition that a motion for new trial will lie following a grant of summary judgment. (See *Scott v. Farrar* (1983) 139 Cal.App.3d 462, 468-469 [188 Cal.Rptr. 823] [holding plaintiffs' motion for new trial should have been granted].)

Notwithstanding the appearance of fairness issue, with which we happen to agree, to reverse on the basis of the claimed deficiencies in the trial court's handling of these motions would serve no useful purpose at this point, because we have decided, on the merits of the parties' arguments, that the trial court correctly entered judgment against plaintiff.

### DISPOSITION

The judgment is affirmed. Defendants shall recover their costs.

Epstein, Acting P. J., and Curry, J., concurred.

A petition for a rehearing was denied January 18, 2000, and appellant's petition for review by the Supreme Court was denied March 22, 2000. Mosk, J., was of the opinion that the petition should be granted.

---

[18]Neither *Mediterranean Construction Co.* nor *Gwartz* had been decided when the trial court declined to hear plaintiff's argument at the summary judgment hearing. In *Lewis v. Superior Court* (1999) 19 Cal.4th 1232 [82 Cal.Rptr.2d 85, 970 P.2d 872] (oral argument not required in situations where court of appeal is authorized to issue peremptory writ of mandate or prohibition in the first instance pursuant to Code of Civil Procedure section 1088), the Supreme Court noted the disagreement between the *Sweat* or *Mediterranean* decisions but expressed no view on the validity of either. (19 Cal.4th at p. 1248, fn. 10.)