I respectfully dissent. In my opinion (1) Ralphs Grocery Company (Ralphs), through its truckdriver, Hen Horn, owed a duty to Adelelmo Cabral (Decedent); (2) substantial evidence supports the jury's finding that Horn's actions were the proximate cause of the accident; and (3) the trial court properly admitted Robert Anderson's expert testimony. I would affirm the judgment.
A. Duty of Care
Ralphs contends the trial court erred by denying its motion for judgment notwithstanding the verdict because Horn owned no duty of care to Decedent. I disagree.
In determining whether to grant a motion for judgment notwithstanding the verdict, a trial court must (1) accept the evidence supporting the verdict as true; (2) disregard all conflicting evidence; and (3) indulge in every legitimate inference that may be drawn in support of the judgment. The court may grant the motion only if there is no substantial evidence to support the verdict and the evidence compels a judgment for the moving party as a matter of law. On appeal from the denial of such a motion, an appellate court determines de novo whether there is any substantial evidence, contradicted or uncontradicted, supporting the verdict, and whether the moving party is entitled to judgment as a matter of law. (Sweatman v. Department of Veterans Affairs (2001)25 Cal.4th 62, 68 [104 Cal.Rptr.2d 602, 18 P.3d 29]; PaykarConstruction, Inc. v. Spilat Construction, Corp. (2001)92 Cal.App.4th 488, 493-494 [111 Cal.Rptr.2d 863].)
"The general rule of duty is that each person has a duty to use due care to avoid injuring others by his or her careless conduct [citations]. . . ." (Lackner v. North (2006)135 Cal.App.4th 1188, 1197 [37 Cal.Rptr.3d 863]; *Page 24 
see also Civ. Code, § 1714.) There are various considerations that may be taken into account to determine whether a departure from the general rule is appropriate, for example, (1) the foreseeability of the harm, (2) the degree of certainty that the plaintiff suffered injury, (3) the closeness of the connection between the defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost, and prevalence of insurance for the risk involved. (Friedman v. Merck Co. (2003)107 Cal.App.4th 454, 465 [131 Cal.Rptr.2d 885]; see also Castaneda v.Olsher (2007) 41 Cal.4th 1205, 1213 [63 Cal.Rptr.3d 99,162 P.3d 610].)
First, as to the foreseeability of the harm, the assistant transportation manager for Ralphs testified that it was contrary to Ralphs's guidelines for its truckdrivers to stop in emergency areas for nonemergency purposes, and that Ralphs would tell its truckdrivers not to park in emergency-only areas for nonemergency reasons, because trucks leaving the roadway were a safety concern for both the truckdrivers and other motorists. Accordingly, the harm was foreseeable because Ralphs was aware of the danger created by trucks leaving the roadway.
The majority concludes that the type of accident at issue in this case was not foreseeable, because a reasonable person would not foresee a motorist crashing into a big rig that is parked 16 feet from the traffic lanes. I cannot concur with my colleagues because the majority's opinion does not disregard all evidence that conflicts with the judgment, and it does not indulge in every legitimate inference that may be drawn in support of the judgment. I believe that the testimony of the assistant transportation manager shows that the harm suffered by Decedent was foreseeable.
Second, as to the degree of certainty that Decedent suffered an injury — the record reflects that he died as a result of the injuries that he sustained in the accident. Accordingly, his injuries are certain.
Third, in regard to the closeness of the connection between Horn's conduct and Decedent's injury, testimony was presented that if the big rig had not been parked on the side of the interstate, then Decedent may have been able to return safely to the roadway. Additionally, Decedent died at the accident site. Consequently, there is a close connection between the conduct of Horn and Decedent's death.
Fourth, in regard to the moral blame attached to Horn's conduct, "moral blame attaches to the fact a defendant's conduct is negligent — i.e., to *Page 25 
defendant's fault in creating an unreasonable risk of harming others — not to the motive underlying the defendant's negligent conduct." (Ludwig v. City of SanDiego (1998) 65 Cal.App.4th 1105, 1113
[76 Cal.Rptr.2d 809].) In this case, Horn's action of stopping by the side of the interstate was unreasonable in light of evidence that there were truckstops located within two miles of the accident site. Accordingly, there is some moral blame attached to Horn's actions, because he could have stopped in a more reasonable and safe location.
Fifth, in regard to the policy of preventing future harm, imposing liability on Ralphs may help to prevent future accidents by encouraging big rig drivers to stop at safer locations during nonemergencies.
Sixth, I address the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach. The Ralphs assistant transportation manager testified that Ralphs tells its truckdrivers not to park in emergency-only areas for nonemergency reasons, because trucks leaving the roadway are a safety concern for both the truckdrivers and other motorists. As a consequence, truckdrivers who want to stop their trucks for nonemergency purposes would not be allowed to do so along a highway; however, the burden should be minimal, because big rig drivers could stop at various truckstops or rest areas. Further, the community would benefit from not having unnecessary roadside obstacles along the interstates.
Seventh, as to the availability, cost, and prevalence of insurance for the risk involved, all drivers should carry vehicle insurance. (Veh. Code, § 16020.) Accordingly, insurance is readily available, although there may be a range of costs depending on the driver or company involved.
In sum, based on the foregoing factors, I see no reason to depart from the general rule that each person has a duty to use due care to avoid injuring others by their careless conduct. Therefore, I would conclude that the trial court did not err by denying Ralphs's motion for judgment notwithstanding the verdict.
Ralphs contends the foregoing analysis involving the various factors is unnecessary because the Supreme Court has already determined that "a vehicle driver owes no duty to a plaintiff injured by the driver's conduct if the driver can engage in the exact same conduct lawfully and nonnegligently." Ralphs contends the same accident would have occurred if Horn stopped for an emergency, and therefore Ralphs's motion should have been granted. Ralphs relies on Richards v. Stanley
(1954) 43 Cal.2d 60 [271 P.2d 23] (Richards), to support its argument. Richards involved a plaintiff who *Page 26 
was injured when his motorcycle collided with an automobile owned by the defendant, which was being driven at the time by a thief. (Id. at p. 61.) The owner of the automobile had left her key in the car, in violation of the municipal code. (Ibid.) The court concluded that the duty to exercise reasonable care in the management of an automobile does "not encompass a duty to protect [a] plaintiff from the negligent driving of a thief." (Id. at p. 66.) I do not findRichards to be persuasive authority on this issue. Contrary to Ralphs's position, Richards does not hold that there is no duty owed if the conduct at issue could have been engaged in lawfully and nonnegligently; rather, it holds there is no duty to protect a plaintiff from a thief s negligent driving.
Ralphs also relies on the case of Victor v. Hedges
(1999) 77 Cal.App.4th 229 [91 Cal.Rptr.2d 466] (Victor). In Victor, the plaintiff was standing on a sidewalk looking at a compact disk player in Hedges's vehicle. (Id. at p. 233.) Hedges had parked his vehicle on the sidewalk. A second vehicle, driven by Williams, struck the plaintiff and Hedges's vehicle. (Ibid.) The plaintiff "argue[d] that Hedges must be presumed negligent because he violated Vehicle Code section 22500, subdivision (f), which prohibits parking on a sidewalk." (Id. at p. 234, fn. omitted.) The reviewing court concluded that the Vehicle Code section was not meant to prevent the type of accident that occurred in the case, which involved being struck on the sidewalk by a vehicle other than the illegally parked vehicle. (Id. at p. 238.) The appellate court determined that the trial court properly denied the plaintiff's requested presumption that the defendants failed to exercise due care. (Ibid.)
In regard to ordinary negligence, the reviewing court noted that Hedges could only be liable if his conduct fell "below the standard established by law for the protection of those in plaintiffs situation against `unreasonable risk of harm.' [Citation.]" (Victor, supra,77 Cal.App.4th at p. 243.) The reviewing court concluded that there was no evidence showing that "an ordinarily prudent person would have understood that he or she was subjecting [the] plaintiff to an unreasonable risk of harm by standing on the public sidewalk at this location." (Id. at pp. 243-244.)
In regard to the negligence per se issue in Victor, I find the case distinguishable from the instant case because the instant case was not argued on a theory of negligence per se. Plaintiffs did not argue that Ralphs was at fault based upon a parking violation; rather, they argued a theory of ordinary negligence. Additionally, the trial court instructed the jury on ordinary negligence. Consequently, I find any reliance on the negligence per se discussion in Victor to be unpersuasive.
Next, in regard to ordinary negligence, I find Victor
unpersuasive because Victor involved the actions of a third party. In the instant case a third party *Page 27 
was not responsible for the crash, i.e., Ralphs is not being held responsible for a third person harming Decedent. Mr. Riggins, a commercial trucking consultant, testified that, in his opinion, it would fall below the standard of care for a commercial truckdriver to stop on the side of the road to eat and drink. The assistant transportation manager for Ralphs testified that Ralphs would tell truckdrivers not to park in emergency-only areas for nonemergency reasons, because trucks leaving the roadway were a safety concern for both the truckdrivers and other motorists. Accordingly, in the instant case, there is evidence that Horn's conduct fell below a reasonable standard of care for the protection of people driving on the highway, such as Decedent.
Next, Ralphs contends no duty was owed because the "`Emergency Parking Only'" sign was not intended to protect negligent drivers who leave the interstate. Plaintiffs did not argue that Ralphs was at fault based upon a parking violation; rather, they argued a theory of ordinary negligence. Accordingly, the Ralphs argument concerning negligence per se is unpersuasive.
Independent of the parking sign, Ralphs argues Horn owed no duty to Decedent because plaintiffs did not show that Horn's actions subjected Decedent to an unreasonable risk of harm. Ralphs contends there was no evidence that an ordinarily prudent driver would have known he was subjecting motorists to a risk by stopping at the accident site. Contrary to Ralphs's position, Mr. Riggins, a commercial trucking consultant, testified that, in his opinion, it would fall below the standard of care for a commercial truckdriver to stop on the side of the road to eat and drink. Further, the assistant transportation manager for Ralphs testified that Ralphs would tell truckdrivers not to park in emergency-only areas for nonemergency reasons, because trucks leaving the roadway were a safety concern for both the truckdrivers and other motorists. Accordingly, there was evidence that an ordinarily prudent driver would have known he was subjecting motorists to an unreasonable risk by stopping at the accident site.
The majority concludes that a motorist stopped by the side of the road does not have a duty to create a "safe landing" place for other drivers who may veer onto the shoulder. It is not my opinion that motorists have a duty to create a "safe landing" place for other motorists; rather, my position is that there is no reason to depart from the general rule that each person has a duty to use due care to avoid injuring others by their careless conduct.
The majority expresses concern that every time a motorist crashes into a tree or mailbox by the side of the road, the person or entity that owns the roadside object will be liable for the motorist's injuries for failing to provide a safe landing place. The majority's opinion blurs the lines between the standard of strict liability and the standard of negligence. (See Lipson v. *Page 28 Superior Court (1982) 31 Cal.3d 362, 376-377
[182 Cal.Rptr. 629, 644 P.2d 822] [distinguishing strict liability from negligence].) The only duty Horn owed to Decedent was to use due care to avoid injuring Decedent. Moreover, requiring motorists to exercise due care when stopping along a highway does not affect the accepted standard of care applicable to landowners, i.e., that a property owner must exercise "ordinary care or skill in the management of his or her property." (Civ. Code, § 1714, subd. (a); see Davert v. Larson
(1985) 163 Cal.App.3d 407, 410 [209 Cal.Rptr. 445].) Accordingly, contrary to the majority's conclusion, a landowner would not be held liable every time a motorist crashed into a tree or mailbox, if the tree or mailbox was maintained with ordinary care or skill.
Additionally, in their opinion, the majority asks, "If a duty is imposed under the facts of this case, where does it end?" (Maj. opn., ante, at p. 15.) In turn, I ask: If a duty is not imposed under the facts of this case, then where does it begin? Are drivers only required to exercise reasonable care while moving in the flow of traffic? If not, when a driver who has stopped on the shoulder of the interstate starts to rejoin the flow of traffic, then at what distance from the flow of traffic does that driver's duty to use reasonable care begin, three feet, nine feet? It is my opinion that parking along the shoulder of an interstate does not exempt a person from the general duty to avoid injuring others by acting carelessly.
B. Proximate Cause
Ralphs argues that it is entitled to judgment notwithstanding the verdict because substantial evidence does not support the finding that Horn was the proximate cause of the accident. I disagree.
An appellate court reviews a trial court's denial of a motion for judgment notwithstanding the verdict to determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the trial court's denial of the motion. (Shapiro v. Prudential Property CasualtyCo. (1997) 52 Cal.App.4th 722, 730 [60 Cal.Rptr.2d 698].) We "'"must read the record in the light most advantageous to the plaintiff, resolve all conflicts in [their] favor, and give [them] the benefit of all reasonable inferences in support of the original verdict."' [Citation.]" (Carter v. CB RichardEllis, Inc. (2004) 122 Cal.App.4th 1313, 1320
[19 Cal.Rptr.3d 519].)
"Proximate cause involves two elements. [Citation.] One is cause in fact. An act is a cause in fact if it is a necessary antecedent of an event." (PPG Industries, Inc. v.Transamerica Ins. Co. (1999) 20 Cal.4th 310, 315
[84 Cal.Rptr.2d 455, 975 P.2d 652], italics omitted.) The second element concerns public policy. (Id. at pp. 315-316.) The policy element "`asks the . . . *Page 29 
abstract question: should the defendant be held responsible for negligently causing the plaintiffs injury? [Citation.]' [Citation.]" (Jackson v. Ryder Truck Rental, Inc.
(1993) 16 Cal.App.4th 1830, 1847 [20 Cal.Rptr.2d 913], italics omitted.)
As to the first element, Anderson, an engineer, studied the police report, the accident site, photographs, and damages to Decedent's pickup truck. Anderson believed Decedent was applying the pickup truck's brakes at the time of the crash, and if the big rig had not been parked at that location, then Decedent would have been able to return his pickup truck to the interstate. Anderson's testimony is substantial evidence to support the finding that the act of parking the big rig at the accident site was a cause in fact of Decedent's death.
In regard to the policy prong, holding Ralphs responsible for its driver negligently parking on the side of the interstate may encourage other truckdrivers to find safer locations to park during nonemergencies. Accordingly, for policy purposes, Ralphs should be held responsible.
Ralphs argues that Horn's actions were not the proximate cause of Decedent's death because the same accident would have occurred if Horn had stopped along the interstate due to an emergency, i.e. a nonnegligent reason. Ralphs contends that since Decedent's death could have occurred in the same manner from a nonnegligent act, then the actions of the Ralphs driver cannot be the proximate cause of Decedent's death. In support of this argument, Ralphs relies on Bentley v. Chapman
(1952) 113 Cal.App.2d 1 [247 P.2d 575] (Bentley). InBentley, the plaintiffs' host was driving along a highway when he fell asleep, and his vehicle struck the back of a truck that had been parked along the curb. (Id. at pp. 2-3.) The truck had been parked along the curb overnight, in violation of a local ordinance that allowed only for one-hour parking; however, the court concluded that the city's ordinance likely did not apply because the truck was parked along a state highway. (Id. at pp. 3-4.) The reviewing court noted that if the ordinance did apply to the state highway, then parking for a longer period than allowed "would not seem to constitute, as a matter of law, a violation of a duty of care toward the plaintiff." (Id. at p. 4.) The appellate court also concluded that such a violation could not, as a matter of law, be deemed a proximate cause of the plaintiffs' injuries. (Ibid.)
"`"`Negligence per se'"'" and "`"`negligence as a matter of law'"'" are equivalent expressions. (Kastel v.Stieber (1932) 215 Cal. 37 [46, 8 P.2d 474], italics omitted.) The instant case is not a case of negligence per se, rather it is based on the concept of ordinary negligence, i.e., the failure to use reasonable care. Accordingly,Bentley's conclusion that the violation did not constitute proximate cause as a matter of law is not controlling here. *Page 30 
A second case relied upon by Ralphs is Capolungo v.Bondi (1986) 179 Cal.App.3d 346 [224 Cal.Rptr. 326]. InCapolungo, the plaintiff, who was on a bicycle, was struck by a car as she tried to pass the defendant's parked car. (Id. at p. 348.) The defendant's car had been parked in a 24-minute zone for most of the day. (Ibid.) The reviewing court concluded that "any excess in the length of time [the defendant's] car was parked in the yellow zone had no causal connection with the accident[, because the plaintiff] would have had to swerve around the car in exactly the same manner whether it had been parked there five minutes or five hours." (Id. at p. 354.) In the current case, plaintiffs did not argue that Ralphs was negligent because Horn parked in an area that was reserved only for emergencies; rather, plaintiffs argued that Ralphs was negligent because Horn's actions fell below a reasonable standard of care, i.e. ordinary negligence. Plaintiffs did not contend that the negligence finding should be based on negligence per se. Accordingly, I do not findCapolungo to be controlling.
The majority concludes that substantial evidence does not support a finding that the act of parking the big rig along the side of the interstate was the proximate cause of Decedent's injuries. The majority finds a lack of substantial evidence because (1) the big rig was parked in an emergency parking area; (2) Decedent's driving was erratic; and (3) Anderson's opinion was faulty.
The majority's reasoning is compelling, and if I had served as a juror on this case, I likely would have found in favor of Ralphs and Horn on the element of proximate cause; however, when reviewing the record in the light most advantageous to the plaintiffs and resolving all conflicts in their favor, I must conclude that the record includes substantial evidence that Horn's act of parking the big rig along the interstate was the proximate cause of Decedent's injuries. In other words, if I were permitted to weigh the evidence or draw inferences contrary to the verdict, then I would likely find that parking the big rig was not the proximate cause of Decedent's injuries, but since 1 cannot substitute my deductions for those of the jury, and must view the record in the light most favorable to the verdict, I would affirm the judgment, based upon the evidence delineated ante[1] *Page 31 
C. Admission of Evidence
Ralphs contends that the trial court erred by admitting Anderson's expert opinion testimony because Anderson's opinions were based on facts that were not established at trial. I disagree.
"The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed. [Citations.] Where an expert bases his conclusion upon assumptions which are not supported by the record, upon matters which are not reasonably relied upon by other experts, or upon factors which are speculative, remote or conjectural, then his conclusion has no evidentiary value. [Citations.] In those circumstances the expert's opinion cannot rise to the dignity of substantial evidence. [Citation.]" (Pacific Gas Electric Co. v. Zuckerman (1987)189 Cal.App.3d 1113, 1135-1136; see also Andrews v. Foster WheelerLLC (2006) 138 Cal.App.4th 96, 108 [41 Cal.Rptr.3d 229].)
In other words, "proffering an expert opinion that there is some theoretical possibility the negligent act could havebeen a cause-in-fact of a particular injury is insufficient to establish causation. [Citations.] Instead, the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it ismore probable than not [that] the negligent act was a cause-in-fact of the plaintiffs injury." (Jennings v.Palomar Pomerado Health Systems, Inc. (2003)114 Cal.App.4th 1108, 1118 [8 Cal.Rptr.3d 363] (Jennings).)
I review the trial court's decision to admit the expert's opinion for an abuse of discretion — determining if the expert testimony "would (if credited by the jury) provide legally sufficient support for a finding in the plaintiffs favor on the issue of causation." (Jennings, supra,114 Cal.App.4th at p. 1119, fn. 9.)
Anderson testified that he reconstructed the accident based upon the police report, police pictures, depositions, a physical examination of Decedent's pickup truck, a visit to the accident site, his own measurements of the accident scene, and his own photographs of the accident scene. From the foregoing sources, Anderson learned the road at the accident site is flat and straight, the big rig was parked on the right side of the road near the interchange, Decedent's pickup truck struck the right rear corner of the big rig, and two tires marks were at the accident scene. The tire marks were designated "Item No. 1 and No. 2." Anderson believed Item No. 2 showed a side slide from the left rear tire of Decedent's pickup truck. Anderson *Page 32 
explained that he believed the tire mark came from the left rear tire because of the manner in which the pickup truck struck the big rig and the damage to the pickup truck — Anderson's opinion was not solely based upon the conclusions in the police report. Anderson opined that the most plausible explanation for the tire mark was that Decedent had been applying the brakes and trying to turn left towards the interstate at the time of the impact. Anderson said another possible explanation for the tire mark was that there was more gravel in that area, which made it easier to see the tire mark at that point; however, he believed "a logical explanation" was that the brakes had started being applied where the tire mark was made. At minimum, Anderson believed Decedent had been trying to turn left towards the interstate. Anderson opined that if the big rig had not been parked by the side of the road then Decedent would have returned to the interstate.
Officer Migliacci testified that the tire marks came from Decedent's pickup truck. Officer Migliacci believed the tire marks came from Decedent's pickup truck because "the people who documented the evidence believed [the tire marks] to be fresh at the scene." The officer opined that Decedent's pickup truck "would have obliterated that skid mark" if it had been there before the accident. Officer Migliacci was not aware of anybody matching the tire marks on the ground with the tread on Decedent's pickup truck.
Anderson's testimony made it clear that he conducted his own analysis of the accident and independently concluded that the skid marks were from Decedent's pickup truck, due to the manner in which the pickup truck struck the big rig and the damage to the vehicle. Anderson's opinion that the marks were left by Decedent's pickup truck was further supported by Officer Migliacci's opinion that a tire mark that had been at the site before the accident would have been obliterated by Decedent's pickup truck. Accordingly, Anderson's opinion does rise to the level of substantial evidence because his opinion that the tire marks show that Decedent could have returned to the interstate, but for the big rig, is supported by the record; Anderson relied on materials that are commonly relied upon by experts; and the factors he relied upon, such as damage to the pickup truck and photographs, were not speculative, remote or conjectural. (See Box v. California Date Growers Assn.
(1976) 57 Cal.App.3d 266, 274-275 [129 Cal.Rptr. 146] [discussing expert testimony].) Consequently, I conclude that the trial court did not abuse its discretion by admitting Anderson's testimony, because Anderson's expert opinion provides legally sufficient support for a finding in the plaintiffs' favor on the issue of causation.
Ralphs contends Anderson's opinion does not rise to the level of substantial evidence because the reason Anderson believed the tire marks came from *Page 33 
Decedent's pickup truck was due to a notation in the police report that labeled the marks as such. Ralphs asserts that Anderson assumed the tire marks were made by Decedent's pickup truck based upon the opinion of the officer who wrote the report, and that particular officer's opinion was not in evidence. Ralphs contends the trial court excluded the police report during motions in limine, and therefore the report was also not in evidence. Ralphs argues that Anderson's reliance on the opinions in the police report does not transform the opinions into fact, which means the fact that the tire marks came from Decedent's pickup truck was never established at trial.
Anderson did not explicitly testify that he determined the skid marks were from Decedent's pickup truck based solely upon the police report; however, when asked what physical evidence he gleaned from the police report, Anderson did discuss the tire marks. Nevertheless, as noted ante, Anderson testified that he believed the tire marks came from Decedent's pickup truck because of the manner in which the pickup truck struck the big rig and the damage to the pickup truck — Anderson's opinion was not solely based upon the conclusions in the police report. Further, Officer Migliacci testified that he did not know if the tire marks existed before the accident; however, he believed Decedent's pickup truck would have obliterated any tire mark left prior to the accident. The inference to be drawn from that testimony is that Officer Migliacci believed the tire mark came from Decedent's pickup truck based in part upon his own assessment of the accident site. The officer's belief that the tire mark was from Decedent's pickup truck because the pickup truck would have obliterated a previous tire mark, is reasonable and credible. (See DiMartino v. City of Orinda (2000)80 Cal.App.4th 329, 336 [95 Cal.Rptr.2d 16] [substantial evidence means evidence that is reasonable, credible, and of solid value].) Accordingly, while the evidence regarding the tire marks was not overwhelming, there was substantial evidence supporting the theory that the skid mark was left by Decedent's pickup truck. Therefore, Anderson's opinion about the tire marks was properly admitted.
Ralphs goes on to contend that Anderson's testimony does not constitute substantial evidence because it is contradicted by other evidence. Ralphs argues that Anderson ignored witnesses who indicated that Decedent did not use his brakes or try to avoid the tractor-trailer. "When an expert's opinion is premised upon facts contradicted by the only evidence of record, the expert's opinion does not constitute substantial evidence in support of the judgment." (Maples v. KernCounty Assessment Appeals Bd. (2002) 103 Cal.App.4th 172,198 [126 Cal.Rptr.2d 585].) Anderson's opinion was based, in part, on law enforcement photographs that were in evidence. The photographs showed the tire marks and damage to the vehicles. Anderson's opinion that the skid mark came from Decedent's pickup truck was also supported by Officer Migliacci's testimony that he believed Decedent's pickup truck would have obliterated any *Page 34 
previous skid marks. Accordingly, Anderson's opinion was not based solely upon facts contradicted by the evidence of record; rather, his opinion was based on an interpretation of the evidence.
The majority concludes that no evidence was introduced to support Anderson's testimony that the tire marks were from Decedent's pickup truck, and therefore, Anderson's opinion — that the tire marks reflect (1) Decedent would have returned to the interstate but for the big rig, and (2) Decedent might have been braking — was pure speculation. I disagree with the majority's conclusion.
Photographs of the tire impressions were admitted into evidence. The diagram of the accident scene prepared by Officer Migliacci, which depicts the tire marks, was admitted into evidence. Officer Migliacci testified that the skid mark in the photograph would have been "obliterated" by Decedent's truck if it had been made prior to the accident. Officer Migliacci further testified, without objection, that the skid mark was from Decedent's pickup truck. Given the foregoing evidence, I disagree with the majority's conclusion that no documentary evidence or testimony supported a conclusion that the tire impressions came from Decedent's pickup truck.
The majority also concludes that Anderson's expert testimony was faulty because eyewitnesses testified defendant did not apply his brakes or attempt to avoid the big rig. I disagree with the majority's reasoning because the jury was not required to accept the eyewitness testimony as true. (Temple v. DeMirjian (1942) 51 Cal.App.2d 559, 562 [125 P.2d 544].) Additionally, it is the task of the trial court to determine if expert testimony "would (if credited by the jury) provide legally sufficient support for a finding in the plaintiffs favor on the issue of causation." (Jennings,supra, 114 Cal.App.4th at p. 1119, fn. 9, italics added.) Therefore, even if Anderson's testimony was contradicted by eyewitness testimony, it would not be an abuse of discretion to admit the testimony, if it was legally sufficient. I have concluded ante that Anderson's testimony was legally sufficient, and therefore, I do not believe the trial court abused its discretion by admitting the testimony.[2] *Page 35 
D. Conclusion
I would affirm the judgment.
[1] There are some cases in which a court is justified in taking the question of proximate cause away from the jury, such as when "it can be said as a matter of law that the negligence of [the defendants] in no way contributed to the happening of the accident." (Reese v. Day (1955)131 Cal.App.2d 730, 737 [281 P.2d 263].) I believe reasonable minds can differ as to whether defendants' negligence contributed to the accident in the instant case. Accordingly, 1 view this issue as one involving substantial evidence review, rather than a review de novo.
[2] In the majority's discussion of Ralphs's proximate cause contention, the majority asserts that I have "put[] the cart before the horse," because if Anderson's testimony had been excluded then the case would not have been submitted to the jury. (Maj. opn., ante, fn. 11.) As notedante, it is my opinion that the trial court did not abuse its discretion by admitting Anderson's testimony. Accordingly, I respectfully disagree that I have "put[] the cart before the horse" by "overlook[ing] . . . procedural errors." (Maj. opn., ante, fn. 11.) *Page 36